***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications, the Opinion and Award of Deputy Commissioner Baddour.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The date of the accident which is the subject of this claim is June 5, 2007.
2. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On June 5, 2007, an employer-employee relationship existed between plaintiff and defendant-employer.
4. On June 5, 2007, defendant-employer employed three or more employees.
5. Defendant-employer has been insured by ACE-INA at all relevant times.
6. Plaintiff's average weekly wage is $676.50, subject to verification by wage documents.
7. Defendants have admitted that plaintiff sustained a compensable accident on June 5, 2007, but the parties disagree as to the extent of the injuries plaintiff's sustained on June 5, 2007.
8. Dr. Hilts is the authorized treating physician for the overall supervision of plaintiff's necessary medical treatment.
9. Plaintiff's back injury is accepted as a compensable injury and Dr. Max Cohen is the authorized treating physician for the back.
10. Plaintiff's right leg injury is accepted as compensable, with the exception of the right ankle injury which is denied, and Dr. Mark Easley is the authorized treating physician for the right leg. Plaintiff is seeking to have Dr. Mark Easley approved as the authorized treating physician for the right ankle. Prescribed treatment for the right leg, including lymphedema, is authorized. *Page 3 
11. Plaintiff's left arm, left shoulder and left elbow injuries are accepted as compensable. There is a dispute as to the extent of further medical treatment, if any, which may be necessary to treat plaintiff's left arm, left shoulder and/or left elbow injuries. Plaintiff is seeking to have Dr. Eliot Lewit approved as the authorized treating physician for the left elbow injury.
12. The plaintiff's neck injury is accepted as a compensable injury. After taking the deposition of Dr. Eliot J. Lewit on December 17, 2008, the parties agreed and now stipulate that plaintiff's headaches are cervicogenic in nature with a migraine component, meaning the plaintiff's headaches were triggered by her neck injury and are a consequence of the accident. Defendants have authorized Dr. Eliot Lewit to provide treatment for her headaches which are a result of the injury by accident.
13. Plaintiff does not currently claim or seek authorization for treatment of any aggravation of a pre-existing gastrointestinal condition. This stipulation does not foreclose the possibility that a related aggravation of plaintiff's pre-existing gastrointestinal condition may arise in the future.
14. The following exhibits were stipulated into evidence:
 (a) Stipulated Exhibit 1A: Pre-Trial Agreement with handwritten modifications.
 (b) Stipulated Exhibit 1B: Amended Pre-Trial Agreement incorporating the handwritten modifications submitted post-hearing.
 (c) Stipulated Exhibit 2: Indexed Set of Paginated Stipulated Exhibits
 (d) Stipulated Exhibit 3: Motor Vehicle Accident Report
 (e) Stipulated Exhibit 4: Photographs *Page 4 
 (f) Stipulated Exhibit: Workers' Compensation Medical Status Questionnaire
15. The issues before the Deputy Commissioner were whether plaintiff's right ankle condition is compensable and, if so, to what medical treatment is plaintiff entitled; whether plaintiff is entitled to additional medical treatment for her admittedly compensable left arm, left shoulder and/or left elbow injuries; and whether Dr. Eliot Lewit should be approved as the authorized treating physician for plaintiff's left elbow. The only remaining issue on appeal to the Full Commission is whether plaintiff's right ankle condition is causally related to the compensable injury by accident.
 ***********
Based upon all of the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 42 years old and holds a Bachelors degree in psychology.
2. Plaintiff had a pre-existing right ankle condition as a consequence of a non-work-related bicycling accident that occurred in 1997. That injury resulted in a compound or open fracture and required surgical fixation. Plaintiff's 1997 right ankle injury did not heal properly after multiple surgeries and she was left with residual deformity of her right ankle and residual hardware, and developed post-traumatic arthritis in her right ankle. In December 2003, plaintiff was evaluated for persistent pain related to her right ankle by Dr. Mark Easley, an orthopedic surgeon at Duke University Medical Center who specializes in the treatment of knee, ankle and foot. Dr. Easley performed more surgery in March, 2004 to remove the hardware from plaintiff's ankle and to treat the area of non-healing with a bone graft. Dr. Easley found that *Page 5 
there was Grade 2 to Grade 3 damage to the articular surface within the ankle joint that he was able to treat with debridement. He also performed a procedure intended to enable the body to produce fibrocartilage to replace the worn areas of cartilage. On May 11, 2004, Dr. Easley's treatment plan for plaintiff called for continued weight bearing as tolerated and ultimately consideration would be given for ankle replacement versus ankle arthrodesis surgery, depending on her symptoms. No time frame was established for those procedures. Plaintiff returned to Dr. Easley in August 2004, and reported that she was doing better. According to Dr. Easley, plaintiff had achieved a "certain status quo" by November 2005. Dr. Easley noted that plaintiff did not have end-stage arthritis at that time. As of November, 2005, it was Dr. Easley's opinion that he had "no doubt" that plaintiff was able to function reasonably well on her ankle.
3. Dr. Easley's last treatment of the plaintiff, prior to the accident giving rise to this claim, was on November 29, 2005. Dr. Easley did not treat plaintiff for any problems related to her right ankle between November 29, 2005 and the date of the accident giving rise to this claim on June 5, 2007. The effect of the surgery that Dr. Easley performed on plaintiff's right ankle on March 15, 2004, in combination with other non-operative treatment, was to stabilize plaintiff's right ankle.
4. Following the treatment by Dr. Easley in 2004, plaintiff was able to return work and was more active. Plaintiff worked for Central Triad Baptist Association as a mission mobilizer coordinating mission projects and toy drives for area churches. Plaintiff was able to be on her feet walking five days per week. During Hurricane Katrina Relief, plaintiff was able to handle cases of water and assist in loading cases of water onto pallets. *Page 6 
5. Plaintiff began her employment with defendant-employer on October 31, 2006 as a family systems specialist. In this position, plaintiff worked as a child and family therapist with children with mental health diagnoses, working 90% of the time in the community.
6. Plaintiff experienced a flare-up of arthritic type pain in her right ankle in March 2007, which lasted for several days during which she used a cane to assist her walking. Other than this period of several days in March 2007, plaintiff did not require the use of any type of assistive device to aid her with walking during her period of employment by defendant-employer until compensable injury by accident.
7. The accident giving rise to this claim occurred on June 5, 2007. Plaintiff was traveling south on Highway 311 from High Point to see clients in Asheboro. Plaintiff was slowing or stopping in a line of traffic for a red light when a tractor-trailer traveling at a high rate of speed failed to reduce its speed and struck her vehicle from behind. The police report shows that the truck left 148 feet of tire impressions before impact.
8. Plaintiff stated she took her foot off the brake to inch forward. She was then hit from behind before she could do anything further. The impact broke plaintiff's seatback and she was thrown backward into the back seat. Her left arm was pinned up against the back door. Plaintiff's feet flew up and broke the steering column of her vehicle. Plaintiff's left shoe was knocked off and right shoe was hanging on by the straps around the ankle. Plaintiff's shoes had closed toes. After the accident, the toe of the right shoe was bent backwards and plaintiff's toes were out of the shoe. EMTs had to cut the right shoe off plaintiff due to swelling of her ankle. Plaintiff's vehicle was pushed into a vehicle in front of her, then spun around, and was then struck again by the tractor-trailer. *Page 7 
9. Following the accident, plaintiff has received treatment from, or been evaluated by, a number of doctors, including: Dr. Michael J. Hilts, primary care physician; Dr. Mark E. Easley, orthopedic surgeon; Dr. Eliot J. Lewit, neurologist; Dr. Zhongyu Li, orthopedic surgeon, and Dr. Max Cohen, orthopedic surgeon.
10. Plaintiff reported pain in her right ankle during her initial emergency room visit immediately following the accident on June 5, 2007. Plaintiff's pain chart from the medical record of High Point Regional Hospital emergency shows pain indicated at the right ankle. The emergency room physicians also requested and there were x-rays performed on plaintiff's right ankle. Dr. Mark Easley indicated and the Full Commission finds that based on the pain chart and x-ray report, plaintiff made a complaint of pain of her right ankle while at the emergency room on June 5, 2007.
11. Photographs taken of plaintiff's ankles on August 18, 2007, show plaintiff's right ankle has redness and some areas are black or bruised. Dr. Easley reviewed the photos, stating the photos show bruising or abrasions that are consistent with acute trauma.
12. Plaintiff was also evaluated by Dr. Easley for complaints of pain related to her right ankle on August 7, 2007. Dr. Easley recorded plaintiff's history as having been involved in an automobile accident and having aggravated her right ankle. Plaintiff had been functioning reasonably well with the ankle prior to the accident of June 5, 2007 and she became more symptomatic following the accident.
13. Dr. Easley further stated that in his opinion, plaintiff "aggravated quite significantly a pre-existing ankle problem that was relatively stable." Dr. Easley stated that the trauma of the accident was a major setback for plaintiff's ankle, making her condition worse. He explained that although her orthopedic condition did not change markedly, "there was an acute *Page 8 
event that then caused the ankle to be a problem again, and based on the history she gave, it seemed to be related to this car accident." Although Dr. Easley based some of his causation opinions on his incorrect assumption that plaintiff pressed her right foot on the brake or into the floorboard, a reasonable inference can be made that the mechanism of injury was the same whether the force on her ankle was due to her pressing the brake or pressing into the dashboard and breaking the steering wheel. The totality of Dr. Easley's deposition shows that the ankle condition was aggravated by the compensable automobile accident.
14. Dr. Easley felt he would have to re-evaluate plaintiff's right ankle before determining what further treatment she may need, but opined that plaintiff would eventually need something along the lines of an ankle fusion.
15. Based upon the greater weight of the totality of the physical and medical evidence of record, the Full Commission finds that plaintiff aggravated the underlying condition in her right ankle as a consequence of the accident of June 5, 2007, thus resulting in her current right ankle condition. However, the medical evidence fails to show by the greater weight that the motor vehicle accident accelerated any future need for ankle fusion or further ankle surgery, and, therefore, the need for any future surgery has not been shown to be causally related to the compensable injury by accident.
16. Following her accident, Dr. Hilts, plaintiff's primary care physician, referred plaintiff to Dr. Eliot Lewit for further evaluation and treatment for her left elbow injury. Plaintiff was first evaluated by Dr. Lewit on April 29, 2008. Dr. Lewit recorded the onset of plaintiff's symptoms as being the result of the motor vehicle accident of June 5, 2007. Plaintiff reported that she was thrown backwards on impact, that her feet and legs came up suddenly, and the *Page 9 
impact of her feet and legs broke the steering column, and that her left arm was pinned against the side of the vehicle.
17. Dr. Lewit stated that plaintiff "has a left ulnar injury which is a consequence of the accident. . . ." Dr. Lewit further indicated that the nerve itself was injured as a consequence of some trauma which was sustained during the accident.
18. Dr. Lewit stated plaintiff required further treatment for her left elbow to include a semi-rigid elbow brace to prevent full flexion and that it would be reasonable for her to have a surgical consultation for left ulnar nerve transposition surgery.
19. Defendants sought a second opinion evaluation of plaintiff's left elbow with Dr. Zhongyu Li. Dr. Li evaluated plaintiff on one occasion on February 27, 2008. Dr. Li concluded that plaintiff did not have an ulnar nerve neuropathy based in part upon his understanding that there had been a normal nerve conduction study at Duke. On cross-examination, Dr. Li acknowledged that if there was a repeat nerve conduction study which showed abnormalities as reported by Dr. Lewit in December 2008, that information would show there was progression of the problem.
20. Dr. Lewit reviewed the second opinion report from Dr. Li and disagreed with Dr. Li's findings of normal sensation about plaintiff's left elbow. Dr. Lewit stated that plaintiff's "symptoms are completely consistent with a left ulnar neuropathy."
21. Plaintiff was evaluated by Dr. Max Cohen at the request of defendant-carrier on August 5, 2008, to rule out a cervical radiculopathy as a source of plaintiff's left elbow complaints. Dr. Cohen reported that plaintiff was having neck pain that radiated into her left arm, associated numbness and tingling in the left arm, as well as problems with her lower back, her right leg and right ankle. Dr. Cohen obtained an MRI study of plaintiff's cervical spine *Page 10 
which he interpreted as normal. Dr. Cohen concluded that plaintiff's neck was not the cause of her left arm symptoms. Dr. Cohen diagnosed plaintiff with left cubital tunnel syndrome or irritation of the ulnar nerve at the elbow. Dr. Cohen explained that even though the nerve conduction test he reviewed was reported as normal, there are cases where the diagnosis can be made clinically, and his diagnosis was on a clinical basis. Dr. Cohen recommended surgical consultation for plaintiff's left elbow symptoms.
22. Upon consideration of the testimony as a whole, the Full Commission gives greater weight to the opinions of Dr. Lewit and Dr. Cohen than the opinion of Dr. Li.
23. Based upon the greater weight of the medical evidence of record, the Full Commission finds that plaintiff reasonably sought treatment for her left elbow and left ulnar nerve injury from Dr. Lewit. The treatment prescribed by Dr. Lewit for plaintiff's left elbow and left ulnar nerve injury was reasonably necessary to provide relief to plaintiff for injuries suffered as a consequence of her June 5, 2007 accident. Plaintiff is not at maximum medical improvement and continues to require necessary treatment for her left elbow condition, including a surgical consultation for consideration of left ulnar nerve transposition surgery by Dr. Lewit.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On June 5, 2007, plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). As the result of the compensable injury by accident, plaintiff sustained multiple injuries, including *Page 11 
an injury to her left elbow and the aggravation of plaintiff's pre-existing right ankle condition. N.C. Gen. Stat. § 97-25.
2. The Commission may at any time upon the request of an employee order a change of treatment and designate other treatment suggested by the injured employee. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of her right ankle and left elbow conditions as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including a surgical consultation for consideration of left ulnar nerve transposition surgery by Dr. Lewit. The approved medical expenses do not include any future right ankle surgery. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay for medical expenses incurred or to be incurred as a result of plaintiff's compensable injury by accident, including treatment for plaintiff's right ankle condition, as directed, prescribed or recommended by Dr. Easley, but excluding future fusion or other ankle surgery; treatment for her left elbow and left ulnar nerve injury, as directed, prescribed or recommended by Dr. Lewit; and treatment for her cervicogenic headaches with a migraine component, as directed, recommended or prescribed by Dr. Lewit.
2. A reasonable attorney's fee in the amount of 25% is hereby approved to be deducted from future compensation due plaintiff and paid directly to plaintiff's counsel.
3. Defendants shall pay the cost due the Commission.
This the 12th day of March 2010.
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ DIANNE C. SELLERS COMMISSIONER *Page 1